UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

CHARLES CASTRO,

        Plaintiff,

   - against –

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF SANITATION, JOSEPH DIPIAZZA
(Individually and in his official
capacity), and JOHN AND JANE DOES,

       Defendants.

---------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

**MEMORANDUM & ORDER**

06-CV-2253 (KAM) (RER)

MATSUMOTO, United States District Judge:

      Pending before the court are defendants' motions *in limine*.  Plaintiff Charles Castro ("plaintiff" or "Castro"), a Hispanic male of Puerto Rican descent, alleges that defendants, acting under the color of state law, discriminated against him by "denying him equal treatment in the terms and conditions of employment" on the basis of his race and national origin, and in retaliation "for engaging in protected First Amendment activity[,]" in violation of 42 U.S.C. §§ 1981, 1983, 1985, 2000e, as well as New York State Executive Law § 296 and New York City Human Rights Law, Administrative Code § 8-107.  (Doc. No. 33, Pl. Mem. in Opp'n to Defendants' Motions *in Limine* ("Pl. Mem.") at 1;[1] *see generally*, Doc. No. 1, Compl. ¶¶ 2, 7-16.)  For

---

[1] Defendants request that plaintiff's opposition be "stricken or disregarded" because it was served over two weeks late under the court-ordered briefing schedule.  While the court is concerned

the reasons set forth herein, defendants' motions *in limine* are granted in part and denied in part.

## BACKGROUND

Plaintiff claims that defendants violated his civil rights when they refused to hire him for an entry-level sanitation worker position with the New York City Department of Sanitation ("DSNY"). The parties agree that following plaintiff's termination from the New York City Police Department ("NYPD"), plaintiff passed a civil service exam, which placed plaintiff on an eligibility list for a position with the DSNY. (Doc. No. 29, Def. Mem. in Support of Motions *in limine* ("Def. Mem.") at 2; Pl. Mem. at 2.) Thereafter, plaintiff was called for an interview. Plaintiff alleges that at the interview, he was advised by defendant Joseph DiPiazza, DSNY's Director of Human Resources, that he was not selected for the entry-level position due to his termination from the NYPD and because he had been a party to a class-action discrimination lawsuit against the City of New York (the "City") and NYPD captioned, *Latino Officers' Association v. City of New York* in the Southern District of New York. (*See* Pl. Mem. at 2; Compl. ¶¶ 5, 11-12.)

about plaintiff's failures to comply with court orders, the court notes that defendants failed to notify the court of plaintiff's failure to comply with the briefing schedule or to seek an extension of that schedule. The parties are advised that failure to comply with court orders may result in sanctions.

Plaintiff contends that Mr. DiPiazza's alleged comment regarding the lawsuit demonstrates that defendants were aware of "plaintiff's participation in the prior action against the City" and evidences defendants' retaliatory animus toward plaintiff. (Pl. Mem. at 2.)

By contrast, defendants claim that "[a]t the time the decision was made to consider but not select plaintiff for the . . . [sanitation worker] position in 2005, the agency [DSNY] had no knowledge that he had brought a lawsuit in 1999 against the NYPD stemming from his termination." (Def. Mem. at 2-3.) Instead, defendants assert that plaintiff was not hired because he was "not particularly well-suited to the DSNY." (*Id*. at 2.) In particular, defendants assert that plaintiff's NYPD disciplinary recorded included assault on another sergeant, a partially-substantially incident in which a pedestrian "was run down with a motor vehicle" and making a false statement in connection with an NYPD investigative interview, for which plaintiff was ultimately terminated from the NYPD. (*Id.*) Defendants also contend that plaintiff's offenses, coupled with his "problem with authority[,]" "led . . . decision-makers to conclude that . . . [plaintiff] was not a suitable candidate for the DSNY." (Doc. No. 31, Defendants' Reply Mem. of Law ("Reply Mem.") at 6.)

Plaintiff further contends that the "selection process in DSNY discriminates against Hispanics." (Pl. Mem. at 2.) Plaintiff asserts that Caucasian candidates, "who were also former police officers," were hired for the same position for which plaintiff was considered but not selected, "even though their personnel history in the NYPD was must [sic] more egregious than that of the plaintiff." (*Id.*)

The parties agree that DSNY reviewed the candidacy of former police officers differently than it reviewed other eligible candidates. (*See* Def. Mem. at 3; Pl. Mem. at 2.) According to defendants, former police officers "were reviewed by the First Deputy Commissioner and the Deputy Commissioner for Administration rather than the Human Resources staff" of the DSNY. (Def. Mem. at 3.) Defendants contend that Mr. DiPiazza "simply gather[ed] information" for the First Deputy Commissioner and Deputy Commissioner, and was not "involved in the *decision* not to select plaintiff for appointment to DSNY." (Reply Mem. at 4) (emphasis in original.)

Plaintiff asserts that the DSNY's hiring of Peter DelDebbio, a Caucasian NYPD officer who shot an undercover African-American officer, "led to the special review procedures that were in place when the plaintiff was considered but not selected" for the sanitation worker position. (Pl. Mem. at 6.)

4

Defendants contend that none of the witnesses deposed to date have confirmed that new review procedures for former police officers were adopted in response to "political embarrassment" resulting from the hiring of Mr. DelDebbio. (*See* Def. Mem. at 6.)

## DISCUSSION

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Allen v. City of New York*, 466 F. Supp. 2d 545, 547 (S.D.N.Y. 2006) (citation omitted); *see* Fed. R. Evid. 104 ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . .") Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med.*, Inc., No. 94-CV-5520, 1998 U.S. Dist. LEXIS 15093, at *11 (S.D.N.Y. Sept. 25, 1998). Indeed, courts

considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See National Union*, 937 F. Supp. at 287. Further, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected.]" *Luce*, 469 U.S. at 41.

Rule 402 of the Federal Rules of Evidence requires that evidence be relevant to be admissible. Fed. R. Evid. 402. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Thus, the court's determination of what constitutes "relevant evidence" is guided by the nature of the claims and defenses presented herein.

## A. Alleged Remarks by Defendant Joseph DiPiazza

Defendants move to preclude plaintiff from introducing any evidence that Mr. DiPiazza, DSNY's Director of Human Resources, allegedly advised plaintiff that he was not hired as a sanitation worker because he was a party to a class-action discrimination lawsuit against the City and NYPD. Defendants contend that any statements by Mr. DiPiazza are irrelevant because he "was not a decision-maker in the decision not to

select plaintiff for appointment." (Def. Mem. at 4.)
Defendants further contend that Mr. DiPiazza's alleged
statements are "stray remarks" and would be "much more
prejudicial to defendants than probative of any issue at bar . .
. ." (*Id.*)

Plaintiff opposes defendants' motion *in limine* on the
grounds that Mr. DiPiazza allegedly played a "central role" in
the selection of entry-level DSNY candidates. (Pl. Mem. at 3.)
Plaintiff further contends that even if Mr. DiPiazza was not a
decision maker with respect to plaintiff's candidacy, he was "in
close contact with those who do make the decisions . . . ."
(*Id.*)

Generally, "[s]tray comments are not evidence of
discrimination if they are not temporally linked to an adverse
employment action or if they are made by individuals without
decision-making authority." *Del Franco v. New York City Off-
Track Betting Corp.*, 429 F. Supp. 2d 529, 536-537 (E.D.N.Y.
2006) (quoting *Opoku-Acheampong v. Depository Trust Co.*, No. 99-
CV-774, 2005 U.S. Dist. LEXIS 16387, 2005 WL 1902847, at *3
(S.D.N.Y. Aug. 9, 2005)); *see also Price Waterhouse v. Hopkins*,
490 U.S. 228, 277 (1989) (O'Connor, J. concurring) ("statements
by nondecisionmakers, or statements made by decisionmakers
unrelated to the decisional process itself" are insufficient to

establish discriminatory intent); *Schreiber v. Worldco, LLC*, 324
F. Supp. 2d 512, 518-519 (S.D.N.Y. 2004) ("Verbal comments
constitute evidence of discriminatory motivation when a
plaintiff demonstrates that a nexus exists between the allegedly
discriminatory statements and a defendant's decision to
discharge the plaintiff.") (citation omitted); *see also Burrell
v. Bentsen*, 91-CV-2654, 1993 U.S. Dist. LEXIS 18005, at *29-30
(S.D.N.Y. Dec. 21, 1993) (stray remarks in workplace, statements
by non-decision makers, and statements by decision makers
unrelated to decisional process are not by themselves sufficient
to satisfy plaintiff's burden of proving pretext in a Title VII
case) (internal quotations and citation omitted).

"In determining whether a comment is a probative
statement that evidences an intent to discriminate or whether it
is a non-probative 'stray remark,'" a court should consider

> (1) who made the remark, *i.e.*, a decisionmaker, a
> supervisor, or a low-level co-worker; (2) when
> the remark was made in relation to the employment
> decision at issue; (3) the content of the remark,
> *i.e.*, whether a reasonable juror could view the
> remark as discriminatory; and (4) the context in
> which the remark was made, *i.e.*, whether it was
> related to the decisionmaking process.

*Schreiber*, 324 F. Supp. 2d at 519 (citations omitted).

Applying these factors, Mr. DiPiazza's alleged comment is not a mere "stray remark" and thus should not be precluded. With respect to the first element, at all relevant times, Mr. DiPiazza was the Director of Human Resources for DSNY, not a "low-level" employee. He is also among the named defendants alleged to have discriminated against plaintiff. (*See* Compl. ¶ 6.) As to the second element, plaintiff asserts that he was advised of the adverse decision regarding his candidacy contemporaneously with Mr. DiPiazza's alleged statement. Plaintiff asserts that when he asked Mr. DiPiazza for the "reason" for the adverse decision, Mr. DiPiazza explained "it was due to [plaintiff's] dismissal from the NYC Police Department and [plaintiff's] lawsuit." (Compl. ¶ 12.) With respect to the third element, a reasonable juror could view the remark as evidence of retaliatory animus, especially because the statement allegedly referenced plaintiff's discrimination lawsuit against the City and NYPD. In this regard, Mr. DiPiazza's alleged statement may be probative of the merits of plaintiff's retaliation claim. As to the fourth element, the alleged statement directly relates to the decision-making process to the extent that it was offered as an explanation for the decision not to hire plaintiff.

Citing two Second Circuit decisions, defendants argue that the Second Circuit has stated that introduction of stray remarks at trial "can constitute reversible error." (Def. Mem. at 4) (citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir. 1984) and *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1211 (2d Cir. 1993)). Defendants' reliance on *Haskell* and *Malarkey* is misplaced.

In *Haskell*, the Second Circuit reversed and remanded a jury verdict in an age discrimination case because of the cumulative effect of the district court's erroneous evidentiary rulings. 743 F.2d at 122. In one such ruling, the district court admitted testimony of the following statements made by Kaman, the founder of the defendant company, made over a period of years during plaintiff's employment with defendant: (1) Kaman's reference in the early 1960s to two Kaman employees as "old ladies with balls"; (2) Kaman's concurrence in the early 1970s with a Reader's Digest article to the effect that there is a relationship between aging and strokes; and (3) Kaman's reference in 1974 to 1975 to some younger employees in the company as "young turks." *Id.* at 120-122. The Second Circuit held the admission of this testimony was erroneous because none of the statements referred to the plaintiff, and were not

otherwise relevant to the issue of whether the defendant company discriminated against the plaintiff because of his age.  *Id.*

By contrast, the subject of Mr. DiPiazza's alleged statement concerns plaintiff and the purported reason why plaintiff was not hired.  *Cf. Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1210-1211 (2d Cir. 1993) (distinguishing *Haskell* on the same grounds);[2] *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1547-48 n.5 (11th Cir. 1984) (same).  Further, even assuming that Mr. DiPiazza "simply gather[ed] information" for decision-making managers, his alleged statement is clearly relevant to the issue of retaliatory animus.  Because Mr. DiPiazza's alleged statement occurred contemporaneously with defendants' claimed retaliation, and because the statement evidences an intent to retaliate against plaintiff, defendant's motion to preclude Mr. DiPiazza's statement is denied.  In so ruling, the court does not determine the merits of any hearsay objection.

---

[2] *Malarkey*, also cited by defendants, does not support their position.  In that sex and age discrimination case, the defendant argued that the trial court improperly admitted into evidence statements about the plaintiff made by individuals who recommended candidates to managers for promotions.  The Second Circuit held that statements made by non-decision makers were properly received into evidence "because they showed the pervasive corporate hostility towards [plaintiff] and supported her claim that she did not receive a promotion due to her employer's retaliatory animus . . . ."  983 F.2d at 1210.

## B. Undisclosed Transcript

Next, defendants seek to preclude introduction of a
transcript of an interview between Christopher Castro,
plaintiff's brother, and Nancy Reilly, a supervisor in the
Investigations Division of the Human Resources Department of the
DSNY. (Def. Mem. at 4; Doc. No. 32, Declaration of Phyllis
Calistro ("Calistro Decl."), Ex. B, Interview Transcript.)
Defendants claim that the transcript was not disclosed during
discovery (Def. Mem. at 5) and that plaintiff first disclosed it
"by listing it in the Joint PreTrial Order" (Def. Reply Mem. at
5). Defendants also argue that the transcript does not mention
the plaintiff herein "or . . . anything directly relevant to the
claims in the instant action." (Def. Reply Mem. at 6.)

Plaintiff does not dispute that the transcript was
previously undisclosed. Instead, plaintiff claims that it was
produced to the DSNY in a separate lawsuit commenced by
plaintiff's brother and that the "DSNY is . . . represented by
the same office in both cases." (Pl. Mem. at 4.) While
plaintiff does not indicate how the transcript is relevant to
the present action, he contends that defendants "offer no
evidence of how they have been prejudiced in their preparation
for trial" by his failure previously to disclose the transcript.

(*Id.*)  Defendants do not deny that they received the transcript in plaintiff's brother's lawsuit.

Although defendants have submitted neither plaintiff's mandatory disclosure pursuant to Fed. R. Civ. P. 26(a), nor plaintiff's responses to defendants' written discovery demands, the court construes defendants' motion as alleging that plaintiff violated his disclosure obligations under Fed. R. Civ. P. 26.  Rule 26(a) mandates the disclosure of, *inter alia*, "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."

Plaintiff contends that his failure to disclose the transcript in this action is harmless.  "The burden to prove . . . harmlessness rests with the party who has failed to disclose information pursuant to Rule 26."  *Wright v. Aargo Sec. Servs.*, No. 99-CV-9115, 2001 U.S. Dist. LEXIS 13891, at *6 (S.D.N.Y. Sept. 7, 2001) (citations omitted).  Whether to grant preclusion is in the trial court's discretion.  *See Jockey Int'l, Inc. v.*

*M/ V "Leverkusen Express"*, 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002) (citations omitted).

Courts consider several factors in determining whether a discovery violation mandates preclusion of the evidence at trial: (1) the party's explanation for failure to comply with its discovery obligations; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance. *See Design Strategies, Inc. v. Davis*, 228 F.R.D. 210, 212 (S.D.N.Y. 2005) (quoting *Emmpresa Cubana del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159 (S.D.N.Y. 2003)).

With respect to the first factor, plaintiff states that although the transcript was not disclosed in this litigation, the transcript was disclosed in a separate litigation. The court finds that plaintiff's explanation for his failure to disclose the transcript in the instant action is unavailing and notes that plaintiff has offered no legal authority to support his position that disclosure in an unrelated litigation involving the same defendant satisfies the disclosure requirements of Fed. R. Civ. P. 26.

As to the second factor, plaintiff fails to explain the importance of the transcript to his claims. The court will

14

not speculate as to how plaintiff intends to use the transcript at trial.

As to the third factor, plaintiff conclusorily asserts that defendants have not been prejudiced by plaintiff's failure to disclose the transcript in this case. Yet, it is *plaintiff's* burden to demonstrate lack of prejudice, not *defendants'* burden to demonstrate that they are prejudiced. *See Wright*, 2001 U.S. Dist. LEXIS 13891, at *6; *see also American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) ("Rule 37(c)(1)'s preclusionary sanction is 'automatic' absent a determination of either 'substantial justification' or 'harmlessness.' . . . The burden to prove substantial justification or harmlessness rests with the dilatory party.") (citations omitted).

With respect to the fourth factor, a continuance is not a reasonable possibility. The trial is scheduled for September 14, 2009, a date more than three years after the commencement of this action. Thus, in analyzing the defendants' motion to preclude the transcript, the court is mindful that the trial will commence approximately one month after the issuance of this decision.

Applying the above factors, the court finds that preclusion of the transcript is warranted. Moreover, the

transcript is hearsay and is not relevant to whether plaintiff suffered unlawful discrimination. Accordingly, the transcript is precluded at trial.

## C. Evidence Regarding Other Employees and Applicants

Defendants seek to preclude "any mention during trial" of evidence concerning other former police-officer applicants to the DSNY. (Def. Mem. at 5-6; Doc. No. 37, Defendants' Supplemental Mem. of Law ("Def. Suppl. Mem.") at 4.) Specifically, defendants seek to preclude the testimony of Christopher Castro, plaintiff's brother, and John Taggart, a former NYPD police officer who, according to plaintiff, was hired by the DSNY "despite having a disciplinary history with the NYPD worse than that of the plaintiff." (Doc. No. 21, Joint Pretrial Order, at 4.) Defendants also seek to preclude the introduction of employment records of 13 former police officers who were hired by the DSNY.[3]

Plaintiff contends that information regarding former police officers who applied for and obtained positions with the DSNY is relevant because many former officers "were hired despite disciplinary records . . . much more lengthy and serious

---

[3] While the parties initially disputed the introduction of employment records for at least 23 applicants (*see* Def. Mem. at 5), defendants have withdrawn their objections as to all but 13 applicants (*see* Def. Suppl. Mem. at 15).

than that of the plaintiff." (Pl. Mem. at 4.)[4] Plaintiff contends that evidence of other applicants' employment and disciplinary records is relevant to demonstrate that the "real reason" for plaintiff's non-selection was his "involvement in protected activity by being a plaintiff in a class action . . . against the City . . . for discrimination, or the fact that he is Hispanic." (Pl. Mem. at 6.)

### 1. Christopher Castro

Plaintiff intends to call Christopher Castro to testify "as to actions taken against . . . [Christopher Castro] by the [DSNY]. . . in denying him employment which he believes were based on his race as well as having been a plaintiff in a prior lawsuit against the City of New York when he was employed as a police officer." (Joint Pretrial Order, at 4.) Plaintiff apparently seeks to offer an example of allegedly discriminatory acts against his brother who also purportedly suffered from race discrimination and retaliation under similar circumstances.

---

[4] By order dated June 22, 2009, the court directed the parties to file supplemental briefing on defendants' motion to preclude "Evidence Regarding Employees/Applicants." Specifically, the court ordered the parties to "specify, with appropriate citations to the facts and legal authority, whether and to what extent the contemplated witnesses . . . are similarly situated to plaintiff." Defendants timely complied. Despite receiving notice of the order, plaintiff has failed to submit any additional briefing.

Defendants contend that Christopher Castro's testimony is irrelevant and likely to confuse the jury and unfairly prejudice defendants. (*See* Def. Suppl. Mem. at 3-4.) Defendant thus seeks to preclude Christopher Castro from testifying. (*Id.*)

In his opposition to defendants' *in limine* motion, plaintiff offers no substantive argument as to why his brother's testimony is relevant and admissible.[5] For this reason alone, defendants' motion with respect to Christopher Castro should be granted.

Even assuming the relevance of Christopher Castro's intended testimony, which concededly does not involve plaintiff, the court finds that any probative value is outweighed by the danger of unfair prejudice to defendants, confusion of the issues, misleading of the jury, and undue delay. Christopher Castro is not a party to this action, and apparently has filed his own discrimination lawsuit against the DSNY. Moreover, there is no indication that Christopher Castro was not hired because of his race or participation in a lawsuit against the City. Thus, testimony regarding Christopher Castro's "belie[f]"

---

[5] In his opposition brief, plaintiff baldly asserts that the testimony of "Taggart and Christopher Castro . . . is highly relevant to the issues in this case." (Pl. Mem. at 4-5.) Yet, in the ensuing discussion, there is no further mention of Christopher Castro. (*See id.*)

that he was unlawfully denied employment at the DSNY would protract the trial by taking the testimony "too far afield" from plaintiff's claims. *See Martin v. Reno*, No. 96-CV-7646, 2000 U.S. Dist. LEXIS 18278, at *10 (S.D.N.Y. Dec. 19, 2000) (precluding plaintiff from introducing testimony of witnesses to testify about alleged incidents of discrimination that did not involve plaintiff because of potential prejudice and risk of mini-trials on tangential issues). Accordingly, defendants' motion to preclude Christopher Castro's testimony is granted.

### 2. John Taggart

Plaintiff intends to call John Taggart to demonstrate that the DSNY hired a Caucasian former police officer who allegedly had a "disciplinary history in the NYPD worse than that of the plaintiff." (Joint Pretrial Order at 4.) Plaintiff asserts that, like plaintiff, Mr. Taggart was a sergeant with the NYPD and was terminated following the same incident for which plaintiff was discharged from the NYPD. (Pl. Mem. at 5.) Plaintiff contends that DSNY's hiring of Mr. Taggart evidences DSNY's "discriminatory animus" toward plaintiff and demonstrates that DSNY's proffered reason for not hiring plaintiff – plaintiff's NYPD disciplinary record – is pretextual. Plaintiff further contends that a "jury could reasonably conclude that the only difference between Taggart and the plaintiff is that

Taggert [sic] did not bring a lawsuit against the NYPD for discrimination." (*Id.*)

Although defendants concede that Mr. Taggart and plaintiff were assigned to the same NYPD precinct, served in the same rank and were terminated for the same incident, defendants contend that Mr. Taggart and plaintiff are nonetheless not "similarly situated." (*See* Def. Suppl. Mem. at 5-6.) Defendants assert that plaintiff was not hired because of his "problem with authority[,]" whereas Mr. Taggart had no such problem. (*See id.* at 5.) Moreover, defendants assert that Mr. Taggart was hired in 1999, six years before the DSNY's decision not to hire plaintiff and, as such, there is no evidence that the "same decision-makers [are] at issue . . . ." (*Id.* at 5.)

To prove discrimination by comparing the employer's conduct toward plaintiff to more favorable treatment accorded to other candidates, a plaintiff must measure himself against other "similarly situated" candidates. *See Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citation omitted). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted).

The court finds that the DSNY's hiring of Mr. Taggart may be probative of defendants' allegedly discriminatory and retaliatory refusal to hire plaintiff. That plaintiff and Mr. Taggart may have distinguishable employment and disciplinary records is a question of fact for the jury. *See id.* Although Mr. Taggart's testimony may prolong the trial, the court does not find that it will likely confuse the jury or that its probative value is outweighed by the danger of unfair prejudice to defendants. Accordingly, defendants' motion to preclude Mr. Taggart's testimony is denied.

### 3. Employment Records of Other Applicants

Plaintiff seeks to introduce the employment records of a number applicants who were former police officers and applied and were selected for employment at the DSNY "at or around the same time that the plaintiff was considered but not selected" for employment. (Pl. Mem. at 5.) Defendants dispute the introduction of the employment records of 13 applicants[6] who were hired by the DSNY on the grounds that these applicants were not similarly situated with plaintiff in all material respects.

---

[6] At issue are the employment records of former police officers Daniel McCormick, Ronald Johnson, Adrian Torres, Paul Moehring, James Caputo, Steven Radolinski, Ernest Vitolo, Braulio Batista, Frank Pizzella, Anthony Speziale, Eddie Vera, and Tyrone Franklin, and former police sergeant Kevin Sweeney.

The court has reviewed the disputed records and
defendants' thorough discussion regarding the dissimilarities
and concludes that the records are relevant and may be probative
of defendants' allegedly discriminatory and retaliatory refusal
to hire plaintiff.  As previously discussed, any dissimilarities
between the employment and disciplinary records of plaintiff and
other applicants is a question for the jury and bear on the
weight of the evidence, not its admissibility.  *See Graham*, 230
F.3d at 39.  The court further finds that the probative value of
the disputed employment records is more probative than
prejudicial.  Accordingly, defendants' motion to preclude the
introduction of the 13 disputed employment records is denied.

### D. Evidence Regarding Peter DelDebbio

Defendants seek to preclude as irrelevant questioning
of witnesses regarding former NYPD detective Peter DelDebbio,
who had been involved in the shooting of a fellow officer, and
was subsequently hired by the DSNY following his termination
from the NYPD.  (Def. Mem. at 6.)  Plaintiff contends that
DelDebbio's hiring "led to the special review procedures that
were in place when the plaintiff was considered . . . for a
position in DSNY."  (Pl. Mem. at 6.)  Plaintiff argues that the
"jury should be permitted to understand the genesis of the
special review procedures . . . ."  (*Id.*)  Defendants contend

that "[t]his entire issue has no probative value whatsoever, yet is highly prejudicial to defendants." (Def. Mem. at 6.) The court agrees with defendants.

Plaintiff fails to offer any explanation as to why the "genesis of the special review" procedure for former NYPD officers is relevant to the claims or defenses asserted herein. Even assuming that these "special" procedures were adopted in response to Mr. DelDebbio's hiring, such evidence is irrelevant to the issues to be tried. Further, any probative value is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Accordingly, defendants' motion to preclude the questioning of witnesses regarding Peter DelDebbio is granted.

### E. Testimony Regarding *Latino Officers Association v. City of New York*

Defendants seek to preclude evidence that the class-action lawsuit to which plaintiff was a party, *Latino Officers' Association v. City of New York*, was a class action and that it settled for $20 million. (Def. Mem. at 7.) Defendants contend that introduction of such evidence would be "unduly prejudicial and lacking in probative value." (*Id.*)

By contrast, plaintiff contends that evidence of plaintiff's membership in the class action "goes to the crux" of

plaintiff's retaliation claim. (*See* Pl. Mem. at 7.) Plaintiff further contends that the settlement amount is relevant because defendants would have "taken notice" of "such a large" settlement and thus, such evidence would disprove defendants' position that they had no knowledge of the lawsuit at the time of plaintiff's candidacy. (*See id.*)

The court finds that plaintiff's membership in a class-action lawsuit, the claims alleged in that matter and the fact of its settlement are relevant to plaintiff's allegations in the present action. The court, however, is not persuaded that the settlement amount is relevant to the issue of notice of plaintiff's involvement in legally-protected activity. That defendants would have taken notice of the class-action lawsuit because of the settlement amount is speculative. Further, the court finds that evidence as to the settlement amount may mislead the jury and thus prejudice defendants and should be precluded. Defendants' motion *in limine* is therefore granted with respect to the settlement amount.

## CONCLUSION

Defendants' motions *in limine* are granted in part and denied in part as set forth above. The parties shall appear for a final pretrial conference on August 26, 2009 at 10:00 a.m. and on September 21, 2009 at 9:00 a.m. for jury selection and trial.

SO ORDERED.

Dated: Brooklyn, New York
      August 10, 2009

_____  /s/_____ _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York